So our next case on today's docket is 524-0599, People v. Devlin Miles. I've got Mr. Harris on behalf of the appellant, and I've got Ms. Candon here on behalf of the state. I believe you guys know the real estate your name when you start your argument, and then go right ahead. All right, your honors, as you mentioned, I'm Assistant Defender Levi Harris, and I'm here for my client, the appellant Devlin Miles. May it please the court, at the sentencing in this case, the trial court considered as aggravation against Devlin Miles, five shootings that were carried out in 2020 with a 9mm, and one shooting that was carried out in 2019 with a different 9mm. The court assigned some responsibility for those six shootings to Mr. Miles, even though the state at sentencing produced no evidence that Mr. Miles personally or someone he was responsible for committed any of those shootings. Considering those shootings as aggravation was an abuse of discretion, and it was plain error that requires resentencing on remand in this case. I want to talk briefly about three points. First, what are the two sets of shootings? Let's lay them out and think about them. Second, what was the law about other crimes evidence like this coming in at sentencing? And third, why was it error in this case for the court to hold this against Mr. Miles? So the two sets of other crimes were two sets of shootings committed by two different firearms, one of which was recovered, one of which was never recovered. So the first set, there was a 9mm Glock that was recovered from a car in Mr. Miles' driveway in December 2020. When the police recovered it, they did DNA testing on it and had Mr. Miles' DNA on it, but it also had two other people's DNA on it. Police tested shell casings that were fired from that weapon, and those shell casings came back as a match for four other shootings that took place in Champaign and one that took place in Chicago. However, at sentencing there was no testimony about when were these shootings, who were the intended victims, who was a witness to these shootings. So what you had is an officer who came into court and testified just that we recovered this gun, it had some DNA on it that matched the defendant and two other people, and we fired some shell casings that matched these other shootings. So that's the first gun. There was a second 9mm that was never recovered, and there was a shooting in Champaign in December of 2019 where somebody shot into a house and a little kid got hit and unfortunately survived, but not good. Police recovered casings from the street in that case, tested them, and they came back related to casings from a crime four months before that where a man named James Brown had shot himself in the foot. And then when police said, okay, well, where's the gun that you shot yourself in the foot? He said, well, I gave it to my buddy Devlin Miles. So that gun was never recovered, but those are the two sets of shootings that we're talking about. But that particular shooting, the defendant was actually charged. Correct. That case was pending at the time of the sentence.  So that might be a little different since there was a pending case. You know, the trial court would consider pending cases and things such as that. Your Honor, and I think that that is a key distinction that we want to make that we've litigated back and forth in briefing. We're not arguing that this testimony coming in was improper, okay? We're not arguing that it was improper, for instance, for the police witness to say, you know, we talked to this James Brown. He's got a hole in his foot. We're saying, where's the gun that you, you know, and he said, oh, I gave it to Devlin Miles. It's obvious, it's of record that he's been tried for this. The state not processed it after he was convicted and sentenced. In this case, all that's fine. We're not saying that the admission of this evidence was error. We're saying that, okay, fine, there's some dots. The way that the trial court connected these dots basically supplemented what was missing in evidence was speculation. So, second thing, we talked about what the shootings were. What does the law say about other crimes decisions coming, or not decisions, other crimes evidence coming in? And Justice Brewer, you alluded to this, I think, so that set us up nicely. Sentencing decisions are reviewed for abuse of discretion, but a court can abuse its discretion if it considers an improper factor against a defendant. Such factors can include evidence of misconduct other than a defendant's own misconduct. And where a trial court's conclusion that a defendant brought about misconduct is based on suspicion rather than on hard evidence, the misconduct can't be held against a defendant at sentencing. Where trial courts at sentencing do consider this type of evidence, reviewing courts, this court, must remain unless they can tell that the factor did not play a significant role in the sentence. In this case, from the record, this opposing counsel will have its own view, or her own view on this, but from our perspective, it seems pretty clear that the trial court did consider this shooting evidence against my client, and that that evidence impacted the decision. So from our perspective, again, the main question is, was it error for the court to consider this shooting evidence as evidence of my client's misconduct in the first instance? And the answer is yes. Why was it error? As to the first set of shootings, the ones committed with the Glock 9mm that was recovered, there was no evidence that Mr. Miles committed those shootings in Champaign or in Chicago. There was no evidence that he was legally responsible for the people who did it, insofar as there would have to be evidence that he knew ahead of time what they were going to do with this gun and that he had an intent to aid or facilitate the accomplishment of those shootings to make him responsible. Now, again, and this gets back to Justice Bowie's question once again, we all disagree that there's evidence, obviously, that this gun was found at his house, and in this instance, he was charged, I believe, with a marijuana-related offense when they recovered marijuana from inside of his home. But this gun was recovered at his home and had his DNA on it. He shouldn't have had the gun. And defense counsel admitted as much in argument at sentencing. But to be responsible for these other shootings, which took place outside of, certainly, if there were witnesses, those were not brought into court. So these took place in the presence of people who were never brought in. We don't know what date specifically they were. I mean, presumably, they were before December 2020. We don't know whether they were all gang-related. We don't know whether they were shooting in a group. We don't know whether they were shooting in a car. We just don't know. We just know there were five other shootings. And just being in a gang where a gun might have been involved in gang-related shootings, and, again, I don't think that we're even 100% certain that these were gang-related shootings, it doesn't make Mr. Miles responsible for, you know, all the shootings that are performed with this gun. So that's the first 9-millimeter. As to the second one, the one for which he was charged with the gun-related offense in December 2019, the only evidence that Mr. Miles ever even touched that gun was the detective's testimony that this James Brown told him, hey, I gave that gun to Mr. Miles. Don't have it on me anymore, et cetera. Four months later, this man named Demetrius Lane punched my client in public. Later on that night, somebody shoots into Mr. Lane's house. So nobody sees my client do this. There's no DNA testing to link him to it. You know, the link to the gun itself is even more attenuated than what it was in the first case. So for the court to, and I think the court summed up its own thinking pretty well in a sentencing decision when it said, you know, you can only be at the wrong place at the wrong time so many times. And what that reminded me of, for those of us who came of age in the time of corporal punishment, you would sometimes get a spanking and say, hey, I didn't do that. And I remember more than once my parents would say, well, you probably did something, you know. And, you know, it wasn't quite that overt in this case, like you're a bad guy, we're going to punish you. But I think that the state was successful in sort of waving its hands and saying, look at all these things. And the court's like, well, yeah, you know, chances are. And chances are it's just not sufficient. We have to have some kind of evidence that makes clear that my client was the one who personally did these things or that he was legally responsible for the people who did them. So with that in mind, I think that I will just ask the court to reverse and remand for resentencing. I'm going to, and Counselor Lee, I mean, I can't tell what Ms. Camden's going to argue, but I'm assuming she's going to bring up invited error since she briefed it. And you can either address that now or wait until, if she does bring that up in her argument, waiver and or invited error, save it for your rebuttal. It's just up to you. What am I getting, two minutes? Five minutes. Five will be enough. Okay. Go right ahead. Thank you, Your Honor. May it please the Court, Counsel? Jennifer Camden on behalf of the people. A brief factual point in response to Defense Counsel's questioning whether the shootings linked to the gun found in Case No. 14-02 were gang-related. The Street Crimes Task Force Detective Carpenter testified at page 404 of the record that some participants in the Champaign shootings, as established by their own admissions or circumstantial or direct evidence, were members of the gangs to which Carpenter referred when he described the history of local gangs and the defendant's affiliation with them. In the reply brief, the defendant clarifies that he's not contesting the court's admission and consideration of the evidence arising from these police investigations into the charges that were pending against the defendant at the time of sentencing. So the parties here agree that this evidence was admissible. And because admissible evidence may be considered, the parties here also must agree that this evidence could have been considered by the court for some purpose. Presumably, the defense would agree that the court could have found the evidence reliable and relevant to considerations to be weighed at sentencing, such as the defendant's moral character, history, social environment, rehabilitative potential, and so forth. So in light of the reply brief narrowing the issues here, the parties are left to argue about whether the court used this conceitedly admissible evidence for such proper purposes as these. And I think, Your Honor, that goes to your question about invited error. The defense is now conceding that the evidence was admissible. So the question here isn't whether the court should have considered this evidence or whether the court did consider the evidence. We're arguing about whether the court considered that admissible evidence for proper purposes. And I want to note at the outset that the applicable presumptions here strongly in favor of the interpretation of the record that the court considered the evidence for proper purposes, because the sentence the court is strongly presumed to have based its decision on proper considerations. And those presumptions apply with even more force here, because the parties also agree that the defendant's argument wasn't preserved below, and he's seeking review here under plain error. And the defendant doesn't show plain error simply by showing that the court considered the evidence at sentencing, as he suggests at page 7 and 8 of the reply. He concedes that the evidence was admissible, so he's conceding that the court could consider it, again, for some purpose. And we're just arguing about how the court considered it. And in this case, the court explicitly and repeatedly stated that the defendant was not finding that he committed any of the – that the court was not finding that the defendant committed any of these other shootings. The court took pains to emphasize that, that there was no direct evidence that he committed the shootings linked to the gun found in the 1402 case, and that the evidence didn't show beyond a reasonable doubt that he committed the shooting with which he was charged in the 219 case. And even if the court hadn't been as scrupulous as it repeatedly was, it's, of course, strongly presumed to have considered only appropriate factors. Now, the defendant on appeal attempts to puncture that presumption based on certain words or phrases that the court used in describing that evidence or discussing how it viewed that evidence. One example appears in the reply brief at page 6, in which he quotes the court saying, quote, he is responsible for many of the gang actions. The full quote is, quote, there's also the aggravating factor that the State wants me to consider about that he has been active in gang activities. And although he – it has not been proven beyond a reasonable doubt he is responsible for many of the gang actions, he is clearly involved in gang activity. The court there was restating the State's argument, not announcing its own finding. And then, after restating the defendant's argument, the court went on only to find that the defendant was, quote, active in the gang. That's at page 441. As support for this, the court cited the defendant's own admissions, the evidence of the defendant's associations, and that, quote, with rock, block, that's the name of the gang. He essentially argues with, fights with, and may be related to shootings of people who are in opposite gangs. So we do find that factor is shown. This was not an overstatement of the evidence. The court was not assuming the defendant's guilt of anything. May be related to shootings. Another example of that careful phrasing is on page 444, when the court said there's, quote, some evidence to suggest that he has committed or been involved in other offenses as well. Again, not an overstatement of the evidence, where the defendant had been charged with attempted murder in case number 219, based on a shooting at a gang rival's home, and where the defendant had been found in possession of a gun used in four local recent gang-involved shootings during the execution of the warrant in case number 1402. More specifically, again, in reference to 1402, the court said there is, quote, no evidence to suggest that the defendant committed those other shootings. That's at page 442. The court also acknowledged that people in gangs pass guns around and that the evidence of the defendant's possession of the gun linked to those gang-involved shootings was, quote, just circumstantial evidence that he's involved in gang activity. That's at page 442. Then, in discussing the evidence in case number 219, the court again explicitly acknowledged that the direct evidence in that case was, quote, weaker and circumstantial and, quote, doesn't show beyond a reasonable doubt, end quote, that he shot that child. The court stated that that evidence only, quote, suggested that he, quote, may have shot the child or, quote, he may have been involved in some way. So the court again and again was very careful in explaining how it was viewing this evidence. And, again, the applicable presumptions are that the court used this evidence for proper purposes, such as gauging the defendant's history, social environment, likelihood of reoffending, rehabilitative potential. The defendant notes and selects certain words that the court used in discussing the evidence in case number 1402, where the court commented that gang activity is, quote, sort of like a conspiracy. But this court should consider the record as a whole rather than parsing the legal definitions of a few words used by the court in explaining the sentence. The court need not have found beyond a reasonable doubt that the defendant was guilty of those shootings or criminally responsible for those shootings under the theories of conspiracy or accountability in order for the court to consider the evidence that the defendant, who is conceivably a gang member, was found in possession of that gun. Again, the defendant is conceding that that evidence was admissible, which means that it could be considered. Now, the defendant in the reply brief at page five, based on his addition of italics to the word that, suggests that the court found that the defendant's own gang was like a conspiracy and thus that the defendant was responsible for the shootings, which he argues was an unreasonable inference to make. I'll just say that the interpretation of that passage, like much of what the defendant is seeking review based on a plain error standard, and here the defendant has not met that standard. Also, the evidence was limited to the role played by the defendant in certain shootings, which was that he was found to be in possession of the gun used in them, which was undisputed, relevant, reliable, and admissible. So this Court shouldn't speculate that the sentencing court did more than its said that it was, that this was, quote, just circumstantial evidence that he's involved in gang activity, which, again, is relevant to many sentencing considerations that were probably properly before the court. It's also worth stepping back in my time remaining and considering the sentencing hearing overall in light of the prejudice component of the first prong plain error analysis that the defendant seeks. The parties argued about how much weight the court should assign to the evidence admitted at the sentencing hearing, which I think does go to the invited error issue that Your Honor raised. And the court said that it agreed in part with the defense and that it would assign the evidence from those case numbers less weight than the State urged. Ultimately, the court imposed a moderate sentence considering the defendant's criminal history. The sentencing range for each of the two counts before the court was from 4 to 15 years in prison with the discretion to impose consecutive sentencing. The court imposed sentences on the two charges of 7 years and 12 years to run concurrently. And then on the State's motion, the court dismissed those two pending cases against the defendant, including an attempt to murder charge based on shooting a 9-year-old boy in the chest. For these reasons and the reasons set forth in the People's Answer Brief, the people respectfully request that the court affirm. Justice Packard, do you have any questions? No, thank you. Justice Long? No, thank you. All right. Thank you, counsel. Okay. Real briefly, it seemed like we didn't argue a lot about invited error there, but I will address it because the court brought it up. Yes, this error was forfeited because defense counsel did not put it in her post-sentencing motion. No, the error was not invited for three reasons, one of which we've already talked about. We're not arguing about whether this evidence was admissible or not. We're arguing that the interpretation that the court made based on that evidence was impermissible. Second reason it's not invited error is that defense counsel in sentencing explicitly and emphatically urged the trial court exactly in the direction that we're arguing here, which is that the court should discount the shooting evidence because the state hadn't put on any evidence to tie those shootings to Mr. Miles. The third reason I would say this is not invited error is that many of the cases that we cite and that the state cites in briefing had very similar fact scenarios as far as whether things were waived or not, and none of those cases did the appellate court say, well, this was invited error. So, for instance, in People v. Evans, a defendant contended that the state had erred in having an officer testify about prior bad acts rather than having the alleged victim testify. The court found that that error was forfeited because it wasn't in the post-sentencing motion, but it didn't say that defense counsel had somehow invited the error by cross-examining the witness who had actually showed up. In People v. Brock, a defendant argued that the trial court had put too much weight on incident reports that were attached to a PSI. The court found that on appeal this was forfeited and that the defendant could not argue about the accuracy of what was in those reports because you waived that. The court said, do you have any additions, corrections, deletions, whatever. So, no, you can't argue about the accuracy of what's in those reports, but you can still argue about the conclusions that were drawn from them. Just because you didn't move to strike these reports doesn't mean that you acquiesced in the error that was argued about. I could go on. People v. Morrow, Acquisto, which the state cites, both of which the state cites, People v. Johnson and People v. McPhee, all of these have similar things. So, to sort of summarize, we're not disputing that this error was forfeited, was not included properly in the post-sentencing motion, but it was not invited error. Again, we don't dispute that the court could consider evidence of gun possession against my client. We don't dispute that the court considers that he is in a gang. What we dispute is that the court could hold those six shootings that were committed by two separate guns against the client. Not about the gang evidence, not about whether the guns were possessed, but about the shootings that were committed by those guns. I think back, it's been a long time since I did much hunting, but when I was little, particularly if you were going clone hunting, you took one gun and it didn't matter which gun or which person was doing the shooting, that was the gun that you used. And sometimes Grandpa would take the gun and go out by himself. Sometimes Dad would take the gun. Sometimes we would all go. There would be all kinds of DNA on that gun. But who shot a particular one on a particular night? Anybody's guess. And just because you find that gun and you say, oh, it's got Grandpa, it's got Dad, it's got the three brothers, whatever, that doesn't mean that they're responsible for a shooting that took place on a specific date with that gun. The gun might be responsible, and in fact probably certainly was, but that doesn't lay responsibilities for the actual act of the shooting at the foot of any particular hunter in that analogy. Does Your Honor? Do Your Honors. Does Your Honors. Do Your Honors have any questions? No, thank you. I do appreciate your analogy because it kind of reminds me of my childhood. So I know exactly what you're talking about. Well, hopefully you didn't get too many of those undeserved spankings that I talked about earlier. Oh, I got them this year, but I don't remember raccoon hunting with my grandfather. So just for what that is. Counsel, we will obviously take the matter under advisement. We will issue an order in due course.